UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| KENDALL GARLAND, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:19-cv-01874 |
| | : | |
| ROBERT G. BONDS, | : | |
| BENJAMIN MALLOW, and the | : | |
| CITY OF PHILADELPHIA, | : | |
| Defendants. | : | |

---

**O P I N I O N**
**Plaintiff's Motion for Summary Judgment, ECF Nos. 14, 25—DENIED**
**Defendants' Motions for Summary Judgment, ECF Nos. 27, 29—GRANTED**

**Joseph F. Leeson, Jr.**                                                          **May 5, 2020**
**United States District Judge**

## I.       INTRODUCTION

This is a civil rights action, in which *pro se* Plaintiff Kendall Garland ("Garland") alleges

he was falsely arrested and imprisoned, and maliciously prosecuted, after he was taken into

custody for alleged violations of Pennsylvania's sex offender registry law.  Discovery has

concluded, and Garland has moved for summary judgment.  Defendant Robert G. Bonds

("Bonds") and the City of Philadelphia ("the City") (collectively, "City Defendants"), have cross

moved for summary judgment, as has Defendant Benjamin Mallow ("Mallow").  Upon

consideration of the motions for summary judgment, and for the reasons set forth below,

Garland's motion for summary judgment is denied, and Defendants' motions for summary

judgment are granted.

## II.     BACKGROUND

### A.     The undisputed material facts as set forth by Defendants[1]

During the time period relevant to Garland's claims, Garland was a "Megan's Law" registrant.[2]  *See* Bonds' and the City's Statement of Undisputed Material Fact (collectively, "City's SOMF") [ECF No. 27-3] ¶ 2.   Also during this time period and up until early 2017, Mallow was a State Parole Agent with the Pennsylvania Board of Probation and Parole ("PBPB") assigned to supervise Garland's probation for a previous criminal conviction.  *See* Mallow's Statement of Undisputed Material Fact ("Mallow's SOMF") [ECF No. 29-3] ¶ 2.  On December 31, 2016, pursuant to the terms of his probation, Garland updated his address as 1635 West Susquehanna Avenue, Philadelphia, PA.  *Id*. ¶ 3.  This address is home to Nu-Stop Recovery and Education Center ("Nu-Stop").[3]  *Id*. ¶ 4.  Because, in January 2017, Garland was transferring out of the Philadelphia office of PBPB and therefore to the supervision of a new parole officer, Mallow made two unscheduled and unannounced visits to Nu-Stop.  *Id*. ¶ 6.  These visits were a known condition of Garland's probation.  *Id*.  Garland was absent from Nu-

---

[1]      The Court treats the facts set forth by the Garland and Defendants separately. *See Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 413 (D.N.J. 2018) (explaining that when parties cross move, "[t]he court must consider the motions independently").

As a general matter, the Court cites to the statements of undisputed material fact where the asserted fact is supported by a proper citation to the underlying record, rather than to the underlying record itself.

[2]      Megan's Law requires categorization of and registration by individuals who have been convicted of certain sexual offenses.  *See Riley v. Corbett*, 622 F. App'x 93, 96 (3d Cir. 2015). Documents submitted with the City Defendants' motion for summary judgment indicate that at the relevant time, Garland was categorized as a "Tier 3" registrant.  *See* ECF No. 27-5; *see also* 42 PA. CONS. STAT. § 9799.14(d)(2).

[3]      Although Garland states that he disputes this assertion on the grounds that this is not the precise name of the organization at this address, he appears to concede that a recovery center was located at this address when he states that "Nu-Stop is a recovery house program for drug and alcohol abuse and also offering [sic] various Mental health services."  Garland's Response to Mallow's SOMF ("Garland's Resp. I") [ECF Nos. 35, 38] ¶ 4.  The Court will identify this organization as "Nu-Stop."

Stop at the time of both of Mallow's visits.  *Id*. ¶ 7.  On January 19, 2017, David Miree, the housing manager at Nu-Stop, informed Mallow that Garland had not been at the facility for two weeks.[4]  *Id*. ¶ 8.  Based upon this information, Mallow alerted the Pennsylvania State Police that Garland was in violation of his probation; supervision of Garland's probation was subsequently transferred to another parole agent.[5]  *Id*. ¶¶ 9-10.

In early 2017, City of Philadelphia Police Department Detectives Keenya Taylor and Thomas Martinka were the assigned investigators handling the investigation of Garland's residency pursuant to Megan's Law requirements at the request of Pennsylvania State Police's Megan's Law Section.[6]  City's SOMF ¶ 2.  On January 27, 2016, Detectives Taylor and Martinka were notified by the Pennsylvania State Police via email that a tip had been received stating that Garland had moved out of the address he had reported on December 31, 2016, had

---

[4]     Garland purports to dispute this assertion on the grounds that any information told to Mallow by an employee of Nu-Stop is confidential and therefore should be disregarded.  *See* Garland's Resp. I ¶ 8.  As addressed more fully below, there is no legal basis for this contention in the context of Garland's probation, and more importantly, he does not dispute the accuracy of the information related.  The Court disregards this purported dispute as not "genuine."

[5]     Garland purports to dispute this assertion by stating that he "DENIES that there is a probation violation in this matter at any point prior to February 7, 2017.  If Defendant Mallow alleges a probation violation prior to February, 2017, strict proof is demanded."  Garland's Resp. I ¶ 9.  The Court disregards this purported dispute as not "genuine."

[6]     Garland purports to dispute this assertion, stating that the City Defendants do not produce evidence to support it.  *See* Garland's Response to the City Defendant's SOMF ("Garland's Resp. II") [ECF No. 34] ¶ 2.  However, contrary to Garland's contention, the City Defendants have supported the assertion with a sworn declaration.  *See* Declaration of  Detective Keenya Taylor ("Taylor Decl.") [ECF No. 27-5], Exhibit B to City Defendants' motion for summary judgment.  Garland moreover contends that a Philadelphia Police Department "Investigation Report" submitted by the City Defendants, *see* ECF No. 27-5 at 5-9, lists Officer Bonds as the investigating officer, assumedly implying that these two Detectives were not assigned to investigate the matter, *see* Garland's Resp. II ¶ 2.  However, the report itself states that it was issued by Detective Martinka pursuant to the investigation he conducted with "Det. Taylor."  *See* ECF No. 27-5 at 6.  The Court disregards this purported dispute as not "genuine."

failed to register a new address, and had recently come up missing.[7]  *Id*. ¶ 3.  The tip had come

from Garland's probation office, Benjamin Mallow.[8]  *Id*. ¶ 4.  Mallow's tip also informed the

State Police that Garland was a "Tier 3" offender under Megan's Law in an active status, and

that the last address reported by Garland was 1635 West Susquehanna Avenue.[9]  *Id*. ¶¶ 5-6.

 Detective Martinka subsequently interviewed the house manager at Nu-Stop, who told

him that Garland had moved out of the facility in early January 2017.[10]  City's SOMF ¶ 7.  The

Detectives' investigation moreover revealed that Garland had not notified the State Police of his

change of residence.[11]  *Id*. ¶ 8.  A warrant for Garland's arrest, supported by an affidavit of

probable cause sworn out by Detective Taylor, subsequently issued.[12]  *See id*. ¶ 9.  Garland was

---

[7]     *See* preceding footnote.  A copy of the email is submitted with the City Defendants'
motion.  *See* ECF Nos. 27-5 at 16-17.

[8]     Garland responds to this assertion by stating he "has no personal knowledge of this
information."  Garland's Resp. II ¶ 4.  The email indicates that the tip came from Mallow.  *See*
ECF Nos. 27-5 at 16.

[9]     *See* preceding footnote as to the assertion that the tip indicated Garland was a Tier 3
offender with an active status.  *See* ECF Nos. 27-5 at 16.  As to the assertion that the tip
informed the police of Garland's most recent address, it does not appear Garland disputes this
assertion, notwithstanding that his response says "DENIED as stated."  *See* Garland's Resp. II ¶
6.

[10]    Garland purports to dispute this assertion on the grounds the information Detectives
learned from speaking with an employee of Nu-Stop is confidential and should therefore be
disregarded.  *See* Garland's Resp. II ¶ 7.  As with his dispute of the information related to
Mallow by the house manager, there is no legal basis for this dispute.  Garland moreover does
not dispute the accuracy of the information related.  The Court disregards this purported dispute.

[11]    Garland purports to dispute this assertion by stating that "Defendants have provided no
proof of his assertion" and that they "provided not a single proof [sic] of evidence as to where
the plaintiff had allegedly changed his address to."  Garland's Resp. II ¶ 8.  Contrary to this
contention, the City Defendants have submitted evidence in the form of Detective Taylor's
sworn declaration.  *See* Taylor Decl.  The Court disregards this purported dispute.

[12]    The City Defendants do not affirmatively state this in their statement of undisputed
material fact, but a copy of an arrest warrant dated February 7, 2017, and the affidavit of
probable cause supporting the warrant, dated February 2, 2017, are included with the City
Defendants' motion.  *See* ECF Nos. 27-5 at 11, 35.  The affidavit seeks a warrant for violation of
18 PA. CONS. STAT. § 4915.1, and the warrant lists two charges, for failure to register and verify
under Megan's Law, identified by codes "CC4915A1" and "CC4915A2."  *Id*.

arrested in New Jersey on March 17, 2017 and arraigned the following day for violation of 18

PA. CONS. STAT. §§ 4915(a)(1) and (a)(2).[13]  *See id.* ¶¶ 10, 14; Mallow's SOMF ¶ 15.  The

charges against Garland were withdrawn on May 11, 2017.  City's SOMF ¶ 18.

> ### B.    The undisputed material facts as set forth by Garland[14]

An affidavit of probable cause dated February 2, 2017 and filed by Detective Taylor in

support of a request for a warrant for Garland's arrest states that "[t]he offender is not due to

---

[13]    Although Garland does not dispute that he was arraigned on March 18, 2017, *see* Garland's Resp. II ¶ 14, he purports to dispute that he was arrested on March 17.  To this end he states that "[a]ccording to the docket in the 2017 matter, process in that matter was initiated on February 7, 2017.  The plaintiff was already in custody as of February 7, 2017."  *Id.* ¶ 10.  In one of his reply filings, Garland further states that he "was originally arrested in New Jersey in approximately the beginning of February, 2017 due to an unrelated summary ticket and after a check of the plaintiff's name and identification, it was discovered that a warrant for plaintiff's arrest existed in Pennsylvania."  ECF No. 35 at 3.  The affidavit of probable cause is dated February 2, 2017, and the arrest warrant is dated February 7, 2017.  *See* ECF Nos. 27-5 at 11, 35.  February 7 is also the date the criminal docket sheet for these proceedings indicates that they commenced.  *See* ECF No. 27-4.  This docket sheet also indicates an arrest date of March 17, 2017.  *See id.*  Finally, a copy of Garland's Philadelphia Police Department Arrest Record is included with the City Defendants' motion, and indicates an arrest "Date / Time" of "3/17/2017" at "09:50AM."  ECF No. 27-5 at 33.

For all of these reasons, and notwithstanding Garland's dispute of this assertion, in the absence of any evidence to the contrary the Court accepts that Garland was arrested on March 17, 2017 for violation of 18 PA. CONS. STAT. §§ 4915(a)(1) and (a)(2), on a warrant that issued on February 7, 2017.

[14]    Plaintiff has filed two separate "motions" for summary judgment, both of which contain documents with individually-numbered paragraphs.  *See* ECF Nos. 14, 25.  The Court treats Garland's two motions together as a single motion for summary judgment, and construes the two documents with individually-numbered paragraphs as a single statement of undisputed material fact.  However, these "statements" contain few identifiable "facts"—most of the assertions are legal argument, summaries of what he believes Defendants are alleging, or Garland's attempts to frame what he thinks are the dispositive issues in the case—and even fewer facts that are supported by citations to the record as required by Federal Rule of Civil Procedure 56(c).  *See also* Leeson, J., Policies and Procedures §§ II(F)(7)-(8).  While the Court is cognizant that *pro se* filings "must be liberally construed," *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011), it is also true that *pro se* status does not excuse a litigant's compliance with rules of procedure, *McNeil v. United States,* 508 U.S. 106, 113 (1993).  The Court nevertheless endeavors to distill from Garland's statements what it can.  Additionally, in construing Garland's statement liberally, the Court lists in this section the purported material facts as he sets forth notwithstanding that these assertions may not be "material" to his claims.

verify his address again until the ten day period prior to 03-31-17.  The offender is a Tier 3 and required to register quarterly."[15]  Garland's Statement of Undisputed Material Fact I ("Garland's SOMF I") [ECF No. 14] ¶ 2.  Defendant Mallow was aware that Garland had listed the Nu-Stop facility as his residence, and he was also aware that the facility served as a drug and alcohol treatment facility.  *Id.* ¶ 6.  The last registered address Garland had listed in January 2017 was 1635 West Susquehanna Avenue.[16]  *Id.* ¶ 8.  Garland was charged with violation of 18 PA. CONS. STAT. §§ 4915.1(a)(1) and (a)(2).  *See* Garland's Statement of Undisputed Material Fact II ("Garland's SOMF II") [ECF No. 25]. ¶ 4.[17]

C.    **Procedural background**

Garland filed the complaint in this action on May 1, 2019.  *See* ECF No. 2.  The City Defendants answered the complaint on July 15, 2019, *see* ECF No. 8, and Defendant Mallow answered on August 30, 2019, *see* ECF No. 10.  On September 10, 2019, the Court set a discovery schedule, *see* ECF No. 11, prior to the expiration of which, on December 23, 2019, Garland filed his first motion for summary judgment, *see* ECF No. 14.  The Court subsequently extended the discovery deadline and granted Defendants additional time to respond to Garland's motion.  *See* ECF No. 16.  On January 17, 2020, Garland filed a motion "to exclude any and all testimony regarding the plaintiffs [sic] records at Nu-Stop under the grounds of psychologist-patient privilege." ECF No. 19.  The Court denied this motion as premature.  *See* ECF No. 21.

---

[15]    Garland includes a copy of the affidavit of probable cause with both of his motions to dismiss.

[16]    Garland states that 1635 West Susquehanna Avenue "is clearly not a transient address or homeless shelter" and someone residing there is "not subject to the monthly reporting requirements of SORNA."  This assertion is a mix of unsupported factual assertion and legal argument.

[17]    This reference refers to the third "4th" paragraph in Garland's second SOMF, which lists three paragraphs numbered "4."

Shortly thereafter, upon learning of Defendants' inability to take Garland's deposition, the Court

directed that Garland's deposition take place on February 4, 2020 as a Court-Ordered deposition.

*See* ECF No. 23.  Garland filed his second motion for summary judgment on February 3, 2020.

*See* ECF No. 25.  Defendants filed their response to Garlands' motions and cross-motions for

summary judgment on March 4 and March 9, 2020.  *See* ECF Nos. 27, 29.  After being granted

an extension of time to do so, Garland filed replies to Defendants' motions on March 20, 2020.

*See* ECF Nos. 38-40.

## III.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party bears the initial burden of

establishing that no genuine issue of material fact exists.  *Bacon v. Avis Budget Grp., Inc.*, 357 F.

Supp. 3d 401, 412-13 (D.N.J. 2018).  In determining if the moving party has satisfied this

burden, the Court is obliged to construe all facts and factual inferences in the light most

favorable to the non-moving party.  *See United States ex rel. Simpson v. Bayer Corp.*, 376 F.

Supp. 3d 392, 401 (D.N.J. 2019); *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.

1998).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . .

the burden on the moving party may be discharged by 'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's case."

*Bacon*, 357 F. Supp. 3d at 413 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Where the movant shows a *prima facie* entitlement to summary judgment, the burden

shifts to the non-movant to point to record evidence creating a genuine issue of material fact.

*See* Fed. R. Civ. P. 56(e); *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at

*8 (W.D. Pa. Mar. 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017).  "[T]he non-moving party

may not merely deny the allegations in the moving party's pleadings; instead he must show

where in the record there exists a genuine dispute over a material fact."  *Gibson-Reid v.*

*Lendmark Fin. Servs., LLC*, No. 2:19-CV-02859, 2019 WL 4139034, at *1 (E.D. Pa. Aug. 30,

2019) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)); *see Schoch v.*

*First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and

pleadings are insufficient to repel summary judgment.").  Summary judgment is mandated where

a non-moving party fails "to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial. . . .

[T]here can be 'no genuine issue of material fact'" where "a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*,

477 U.S. at 322-23).[18]

Additionally, as noted, *pro se* filings like Garland's motion and related documents "must

be liberally construed."  *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir.

2011) (citing *Hartmann v. Carroll,* 492 F.3d 478, 482 n.8 (3d Cir.2007)).  At the same time, *pro*

*se* litigants "[are] not excused from conforming to the standard rules of civil procedure."

*Peterson v. Weiss*, No. CIV.A. 12-5431, 2012 WL 6042795, at *1 (D.N.J. Dec. 3, 2012) (quoting

*McNeil v. United States,* 508 U.S. 106, 113 (1993)); *see Sykes v. Blockbuster Video*, 205 F.

---

[18]     This "standard does not change when the issue is presented in the context of cross-motions for summary judgment."  *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). Where parties cross move, the Court "must consider the motions independently, in accordance with the principles outlined above."  *Bacon*, 357 F. Supp. 3d at 413.

App'x 961, 963 (3d Cir. 2006) (explaining that *pro se* plaintiffs are expected to comply with the Federal Rules of Civil Procedure).

## IV.    DISCUSSION

### A.    Identifying the claims Garland is asserting

Before the merits of Garland's claims can be addressed in light of the undisputed factual record, the Court must determine precisely what claims he is attempting to assert.  The complaint in this action is a form *pro se* complaint attached to a separate document titled "COMPLAINT," in which Garland presents specific allegations.  ECF No. 2.  In the form complaint, Garland states the following as the basis for jurisdiction:  "Fourteenth Amendment, Due Process, False Arrest and Malicious prosecution."  *Id*. at 5.  In the attached document, Garland states "[t]his is a complaint filed . . . under 42 U.S.C. section 1983 for judgment and damages for malicious prosecution and false arrest and imprisonment."  *Id*. at 9.  In a section of the same document titled "Claims for Relief," Garland states that he seeks "a declaratory judgment stating that plaintiff was falsely arrestend [sic] in violation of the Fourth and Fifth Amendments of the United States Constitution," and that he "was maliciously prosecuted in violation of the plaintiff's due process rights."  *Id*. at 10.

In light of these statements, which the Court liberally construes, the Court finds Garland to be asserting the following claims:  (1) a claim pursuant to 42 U.S.C. § 1983[19] for false arrest

---

[19]    Title 42 U.S.C. § 1983 is a mechanism for the redress of deprivations of substantive constitutional and statutory rights by individuals acting under the imprimatur of state law.  The statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

and imprisonment in violation of his Fourth Amendment rights; (2) a § 1983 claim for malicious

prosecution in violation of his Fourth Amendment rights; (3) a § 1983 claim for violation of his

Fourteenth Amendment due process rights; and (4) a § 1983 claim for violation of his Fifth

Amendment rights.  The Court will address each claim in turn.

### B.     Whether any party is entitled to summary judgment on Garland's claims

#### 1.     *False arrest and imprisonment*

##### a.     Legal principles

To succeed on a claim of false arrest for violation of one's right to be free from

unreasonable seizure under the Fourth Amendment, a plaintiff must prove (1) that he was

arrested, and (2) that the arrest was made without probable cause.  *James v. City of Wilkes-Barre*,

700 F.3d 675, 680 (3d Cir. 2012).  Similarly, to succeed on a claim of false imprisonment, a

plaintiff must prove that (1) he was imprisoned, and (2) his imprisonment was unlawful.  *Glaspie*

*v. Cty. of Gloucester*, No. CV 15-7691, 2018 WL 4179461, at *4 (D.N.J. Aug. 31, 2018).

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983

---

the party injured in an action at law, suit in equity, or other proper proceeding for
redress . . . .

Importantly, § 1983 "is not itself a source of substantive rights"; rather, the statute is a "method
for vindicating federal rights elsewhere conferred by those parts of the United States Constitution
and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979);
*Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009)
(explaining that Section 1983 "is a vehicle for imposing liability against anyone who, under
color of state law, deprives a person of 'rights, privileges, or immunities secured by the
Constitution and laws'" (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4-6 (1980))); *see Three Rivers
Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 422 (3d Cir. 2004)
("Once the plaintiff establishes the existence of a federal right, there arises a rebuttable
presumption that the right is enforceable through the remedy of § 1983.").  Additionally, a
defendant in a suit brought pursuant to § 1983 "must have personal involvement" in the alleged
deprivation of civil rights in order to be liable. *Dotts v. Coleman*, No. 3:17-CV-429, 2019 WL
4745595, at *2 (D.N.J. Sept. 30, 2019) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d
Cir. 1988)).

for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). "Thus, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause." *Wynder v. Womack*, No. CV 17-13239, 2018 WL 4846677, at *4 (D.N.J. Oct. 5, 2018).

"Probable cause exists 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'"[20] *Finnemen*, 267 F. Supp. 3d at 646 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). The probable cause inquiry is "entirely objective." *Halsey*, 750 F.3d at 299; *see Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 123 (D.N.J. 2017) ("In determining whether probable cause existed at the time of the arrest, the arresting officer's state of mind (except for the facts that he knows) . . . [is] irrelevant." (quotations omitted)). As is relevant here, "an active and facially valid arrest warrant will generally supply probable cause to arrest." *Rothermel v. Dauphin Cty., Pennsylvania*, No. 1:16-CV-1669, 2020 WL 1467267, at *5 (M.D. Pa. Mar. 26, 2020) (citing *Lawson v. Pa. SPCA*, 124 F. Supp. 3d 394, 405 (E.D. Pa. 2015)).

Finally, "a defendant is insulated from false arrest liability so long as '[p]robable cause . . . exist[ed] as to any offense that could be charged under the circumstances." *Akins v. City of Erie Police Dep't*, No. 18-395, 2020 WL 838564, at *4 (W.D. Pa. Feb. 20, 2020) (quoting *Barna*

---

[20]    *See Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) ("An arrest [is] made without probable cause if 'at the moment the arrest [is] made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.' In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964) and citing *Johnson v. Campbell,* 332 F.3d 199, 211 (3d Cir. 2003))).

*v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)); *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) ("[W]e do not question the rule that there need not have been probable cause supporting charges for every offense for which an officer arrested a plaintiff for the arresting officer to defeat a claim of false arrest.").

> **b.      Application to the undisputed material facts**

The City Defendants contend that Garland's false arrest and imprisonment claims must fail because (1) they are barred by § 1983's two-year statute of limitations pursuant to Pennsylvania law, (2) Officer Bonds was not personally involved in the investigation or arrest of Garland, and therefore any claim premised on § 1983 against him must fail, and (3) there existed ample evidence to support a finding of probable cause.  *See generally* City Defendants' Memorandum in Support of their Motion for Summary Judgment ("City's Mem.") [ECF No. 27-8].  Defendant Mallow makes essentially the same three arguments, with the second being that he was not personally involved in the investigation or arrest of Garland.  *See generally* Mallow's Memorandum in Support of his Motion for Summary Judgment ("Mallow's Mem.") [ECF No. 29-7].

Defendants' third argument—that probable cause existed to arrest Garland—has the potential to be dispositive of Garland's false arrest and false imprisonment claims.  Indeed, as set forth below, the Court agrees with Defendants that it cannot be disputed that probable cause existed to effect Garland's arrest, and his false arrest and false imprisonment claim fail as a result.  Because Garland cannot succeed on these claims, there is no need to address Defendants' other arguments with respect to them—*i.e*, that these claims are barred by the applicable statute of limitations, that Bonds and Mallow were not personally involved in any of the alleged conduct, and, with respect to the City, that the facts do not support municipal liability.

Consequently, the Court limits its discussion to the absence of probable cause to support Garland's arrest.

The following facts cannot be disputed.  On January 26, 2017, Detectives Taylor and Martinka were notified by the State Police that, according to a tip from Garland's probation officer, Garland had moved out of his registered residence at Nu-Stop in early January and had subsequently failed to update his residence as required.  *See* Mallow's SOMF ¶¶ 6-7; City's SOMF ¶¶ 3-6.  Detective Martinka subsequently interviewed the house manager at Nu-Stop, and confirmed that Garland had moved out of the facility in early January 2017.  City's SOMF ¶ 7. The Detectives' investigation moreover revealed that Garland had not notified the State Police of his change of residence.  *Id*. ¶ 8.  On February 2, 2017, Detective Taylor swore out an affidavit of probable cause in support of a request for an arrest warrant, *see* ECF No. 27-5 at 11, and a warrant issued on February 7, 2017 for Garland's arrest for the two charged offenses, *see* City's SOMF ¶ 9; ECF No. 27-5 at 35.  Garland was arrested on March 17, 2017.  *See* City's SOMF ¶ 10.

The charged offenses—18 PA. CONS. STAT. §§ 4915.1(a)(1) and (a)(2)—are defined as follows:

> An individual who is subject to registration under [42 PA. CONS. STAT. § 9799.13] (relating to applicability) commits an offense if he knowingly fails to:
>
> > (1) register with the Pennsylvania State Police as required under [42 PA. CONS. STAT. § 9799.15] (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police); [or]
> >
> > (2) verify his address or be photographed as required under [42 PA. CONS. STAT. § 9799.15], 9799.19 or 9799.25.

18 PA. CONS. STAT. §§ 4915.1(a)(1), (a)(2).  Title 42 PA. CONS. STAT. § 9799.15(g)(2), in turn, provides that a person subject to PA. CONS. STAT. § 9799.13 must,

> [i]n addition to the periodic in-person appearance required in subsections (e), (f) and (h) . . . appear in person at an approved registration site within three business days to provide current information relating to . . . [a] commencement of residence, change in residence, termination of residence or failure to maintain a residence.

In light of the definitions of these offenses, it is clear from the undisputed factual record—specifically, Mallow's failure to find Garland at Nu-Stop on two separate occasions, the information obtained from the house manager at Nu-Stop by both Mallow and Detective Martinka that Garland had left the facility in early January,[21] as well as the fact that Garland had failed to update his address within three days of his departure from Nu-Stop—that Detective Taylor had probable cause to believe Garland had violated 18 PA. CONS. STAT. §§ 4915.1(a)(1) and (a)(2) and to seek a warrant for his arrest on that basis.  Because the February 7, 2017 warrant for Garland's arrest was facially (and genuinely) valid,[22] probable cause existed to support his arrest.  *See United States v. Pack*, No. CR 17-43, 2019 WL 6768583, at *8 (W.D. Pa. Dec. 12, 2019) (finding that "because there was a pre-existing warrant for Plaintiff's arrest, the officers had probable cause to arrest him"); *Brooks v. Gillen*, No. CV 17-2672, 2018 WL 1981480, at *6 (D.N.J. Apr. 26, 2018) ("Generally speaking, a facially valid warrant establishes probable cause for an arrest and indicates that officer's arrest was objectively reasonable."); *see also Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012) ("Where the alleged Fourth

---

[21]     As noted, Garland claims that the information Defendants obtained from the house manager at Nu-Stop, which was used in support of the warrant application—specifically, that Garland had moved out of the residence in early January—is somehow privileged and/or confidential and, accordingly, "[i]t is as if those statements were never made."  Garland's Resp. I ¶¶ 7, 8; *see* ECF No. 35 at 8-15.  This contention is simply without merit.  Although Garland references the "Drug and Alcohol Abuse Control Act" and "the Pa MHPA," he does not explain—nor is it apparent to the Court—how these purported legal authorities, or any other legal authority, makes confidential or otherwise privileges the general and objective information related to Garland's physical location.

[22]     "[A]n erroneously issued warrant—that is, one that is facially valid but genuinely invalid—does not supply probable cause for arrest."  *Rothermel*, 2020 WL 1467267, at *5.

Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral

magistrate has issued a warrant is the clearest indication that the officers acted in an objectively

reasonable manner or, as we have sometimes put it, in 'objective good faith.'"); *United States v.*

*Leon*, 468 U.S. 897, 921 (1984) ("It is the magistrate's responsibility to determine whether the

officer's allegations establish probable cause and, if so, to issue a warrant comporting in form

with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be

expected to question the magistrate's probable-cause determination or his judgment that the form

of the warrant is technically sufficient.").[23]

The existence of a valid arrest warrant does not, however, end the inquiry as to Garland's

claims of false arrest and false imprisonment.  "[A] plaintiff may succeed in a § 1983 action for

false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the

evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for

the truth, made false statements or omissions that create a falsehood in applying for the warrant;'

and (2) that 'such statements or omissions are material, or necessary, to the finding of probable

cause.'"  *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212

F.3d 781, 786-87 (3d Cir. 2000)); *see Brooks*, 2018 WL 1981480, at \*7.

---

[23]     Because Garland's arrest was made pursuant to a valid warrant supported by probable cause, the issue of exactly who arrested Garland on March 17, 2017—Garland alleges, baselessly in light of his concessions he made at his deposition, *see* Garland Deposition Transcript ("Garland. Dep.") [ECF No. 27-7] at 21-22, that it was Bonds who arrested him; the City Defendants state otherwise—would appear to be moot.  That is, the probable cause established by the warrant extended to whatever individual arrested Garland.  *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.").

There is no evidence in the record that Detective Taylor, Detective Martinka, Officer Bonds, or any other law enforcement official made materially false statements or omissions in support of the warrant application, let alone that anyone knowingly, deliberately, or recklessly did so. Garland's arguments to the contrary are baseless.[24] Indeed, the representations made in the affidavit of probable cause are in no way false or misleading, and rather are consistent with the representations Defendants have made in support of their motions for summary judgment, which they stand by. As a result, Garland is unable to overcome the presumptive validity of the arrest warrant.

In sum, because the undisputed factual record shows that probable cause existed to arrest Garland, he is necessarily unable to prove an essential element of his claims for both false arrest and false imprisonment. Garland's false arrest and false imprisonment claim therefore must fail, and summary judgment is mandated in favor of Defendants as to these claims. *See, e.g.*, *Young*

---

[24]     In his reply filings, Garland states that "Defendant Bonds and the City of Philadelphia omitted crucial information from the arrest warrant . . . . Specifically, it was omitted that the property address provided at 1635 Susquehanna Avenue was in fact a Drug and Alcohol treatment facility and also a Mental Health Facility protected by privilege."   ECF No. 35 at 4. However, this alleged omission did not "create a falsehood"; nor is it "material, or necessary, to the finding of probable cause." *Goodwin*, 836 F.3d at 327. As noted previously, because there is no identifiable privilege that would preclude consideration of objective information, disconnected as it is from Garland's medical or substance abuse treatment—for example, where Garland was physically located—its inclusion in the warrant application would have had no bearing on the probable cause determination. *See Lincoln v. Hanshaw*, 375 F. App'x 185, 189 (3d Cir. 2010). What is more, even if there existed some privilege applicable to this information, it is far from clear that such a privilege would preclude this information's inclusion and consideration on a probable cause determination. *See, e.g.*, *Draper v. United States*, 358 U.S. 307, 312 (1959) (explaining that "[t]here is a large difference between the two things to be proved [guilt [at trial] and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them"); *cf. Lemons v. Atl. City Police Dep't*, No. CIV. 06-3440, 2009 WL 140514, at *3 (D.N.J. Jan. 20, 2009) ("It is well established that 'hearsay may be the basis for issuance of [an arrest] warrant so long as there is a substantial basis for crediting the hearsay.'" (quoting *United States v. Ventresca,* 380 U.S. 102, 108 (1965))).

*v. City of Hackensack*, 178 F. App'x 169, 171 (3d Cir. 2006) (affirming a grant of summary

judgment to defendants in a § 1983 false arrest case on basis of probable cause where the warrant

"appear[ed] on its face to be valid"); *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593

(M.D. Pa. 2008) ("[F]alse arrest and false imprisonment are essentially the same claim.").

### 2.    *Malicious prosecution*

#### a.    **Legal principles**

To succeed on a claim of malicious prosecution, a plaintiff must prove (1) the defendants

initiated a criminal proceeding, (2) the proceeding ended in the plaintiff's favor, (3) the

proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a

purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of

liberty consistent with the concept of seizure as a consequence of a legal proceeding.[25]  *Glaspie*,

2018 WL 4179461, at *5; *see McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)).

Although they are related and often asserted together, a claim of malicious prosecution is a

slightly different species of claim from claims of false arrest and imprisonment.  In particular,

---

[25]    There is a lively discussion in the current case law regarding the extent to which plaintiffs can assert § 1983 claims of malicious prosecution for alleged violations of rights other than those conferred by the Fourth Amendment, such as, for example, malicious prosecution for alleged violations of Fourteenth Amendment procedural due process rights.  *See, e.g., Lewis v. City of Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *5 (E.D. Pa. Apr. 6, 2020) ("Defendants seek dismissal of the malicious claim to the extent it relies on the Fourteenth Amendment, arguing that malicious prosecution claims that sound in the Fourteenth Amendment are barred as a matter of law . . . . The Court disagrees with Defendants' position that [the] Fourteenth Amendment malicious prosecution claim is categorically unavailable. However, [ ] the legal landscape on this question is complicated and uncertain . . . ."); *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380 (E.D. Pa. 2018) (observing that "case law in this Circuit may be described as inconsistent" on the issue).

The Court assumes Garland grounds his malicious prosecution claim on alleged violations of his Fourth Amendment rights, *see Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim [for malicious prosecution] must be judged."), and assumes his reference to the Fourteenth Amendment is intended to assert a stand-alone due process claim.

unlike a claim of false arrest or imprisonment, a "cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which . . . is likely to have placed an additional burden on the plaintiff." *Lopez v. CSX Transp., Inc.*, No. CIV.A. 06-1802, 2007 WL 2212858, at *5 (D.N.J. July 31, 2007) (quoting *Johnson*, 477 F.3d at 85); *Johnson*, 477 F.3d at 85 (explaining that "a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified," and finding that the district court "erred in dismissing [plaintiff's] claim of malicious prosecution inasmuch as the court did not consider whether there was probable cause to initiate the criminal proceedings with respect to" all of the offenses").

"Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they 'conceal or misrepresent material facts' to the prosecutor." *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)).  "In particular, an officer is liable if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" *Thomas*, 290 F. Supp. at 379 (quoting *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).

### b.    Application to the undisputed material facts

As with his claims of false arrest and false imprisonment, Garland's claim of malicious prosecution fails as a matter of law.  As the Court has already determined, from the undisputed facts there can be no dispute that probable cause existed to arrest Garland for violation of 18 PA.

Cons. Stat. §§ 4915.1(a)(1) and (a)(2).  As a consequence, Garland is unable to prove the third

element of a malicious prosecution claim:  that the criminal proceedings were commenced

without probable cause.  *Luthe v. City of Cape May*, 49 F. Supp. 2d 380, 392 (D.N.J. 1999)

("Generally, where a criminal proceeding has been initiated based on probable cause, a civil

rights plaintiff cannot maintain a claim for malicious prosecution." (citing *Montgomery v.

DeSimone,* 159 F.3d 120, 124 (3d Cir. 1998))); *see Woodyard v. Cty. of Essex*, 514 F. App'x 177,

184 n.3 (3d Cir. 2013) ("Woodyard's malicious prosecution claim is meritless because probable

cause supported both the arrest warrant and the indictment issued against him.").

Additionally, because Garland's malicious prosecution claim fails as a matter of law, the

Court need not address whether it is barred by the applicable statute of limitations, whether

Bonds or Mallow were sufficiently personally involved to trigger § 1983 liability for this claim,

or whether the facts support § 1983 municipal liability against the City for this claim.  Without a

viable underlying constitutional claim, these additional considerations are moot.

### 3.    *Violation of Fourteenth Amendment due process rights*

As noted previously, the Court treats Garland's reference to the "Fourteenth

Amendment" as an attempt to assert a stand-alone due process claim.  As a general rule, "a

Fourteenth Amendment due process claim is unavailable where the claim is encompassed within

a more specific [constitutional] amendment."  *DeLade v. Cargan*, No. 3:16-CV-00415, 2019 WL

1387704, at *3 (M.D. Pa. Mar. 27, 2019).  In Garland's circumstances, that would be the Fourth

Amendment.  However, notwithstanding the general rule, there are a several discrete types of

claims courts have recognized as being viable directly under the Fourteenth Amendment.

In *Black v. Montgomery County*, 835 F.3d 358 (3rd Cir. 2016), the Third Circuit held

"that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against

state actors" under the Due Process Clause of the Fourteenth Amendment "'if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged.'"  *Bracken v. Cty. of Allegheny*, 760 F. App'x 81, 85 (3d Cir. 2019) (quoting *Black*, 835 F.3d at 371).  To the extent Garland is attempting to assert such a claim, it must fail: there is simply no evidence in the record that Defendants—or any other law enforcement official—fabricated evidence; nor is there anything to support that even if evidence was fabricated, without such evidence Garland would not have been criminally charged.

The only other due process claims Garland could attempt to assert are, in the Court's view, claims of violation of his "substantive" and "procedural" due process rights under the Due Process Clause of the Fourteenth Amendment.  However, "a pretrial deprivation of liberty that is related to a criminal proceeding is addressed not through procedural due process, but the Fourth Amendment."  *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009); *see Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial.").  Therefore, if Garland is attempting to assert either a "substantive" or a "procedural" due process claim directly under the Fourteenth Amendment, neither is cognizable under his circumstances.[26]  *See Crouse*, 668 F.

---

[26]     What is more, even if Garland were able to assert these claims, there are no facts in the record to support that any conduct of Defendants was so depraved as to "shock the conscience"—the standard for asserting a substantive due process claim, *see, e.g.*, *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001)—nor are there any facts in the record to support that Garland was deprived of his liberty without "due process of law"—the standard for asserting a procedural process claim, *Clark v. Coupe*, 632 F. App'x 85, 86 (3d Cir. 2016).  Garland's arrest was supported by a valid warrant issued by a neutral magistrate based upon the existence of probable cause, and "due process of law" was afforded as a consequence.

Supp. 2d at 674 ("A procedural due process claim is [ ] an inappropriate vehicle by which to seek vindication for a purportedly unlawful arrest . . . ."); *Albright v. Oliver,* 510 U.S. 266, 274-75 (1994) (precluding a substantive due process claim when allegations complained of pretrial deprivation of liberty).  Any such claims fail as a matter of law.[27]

> ### 4.      *Fifth Amendment claim*

Finally, Garland attempts to assert a claim for violation of his rights under the Fifth Amendment to the United States Constitution.  *See* ECF No. 2 at 10.  However, "[i]t is axiomatic that the strictures of the Fifth Amendment apply only to the actions of the federal government. *Miller v. Indiana Hosp.*, 562 F. Supp. 1259, 1275 (W.D. Pa. 1983) (citing *Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 461 (1952)); *see Dusenbery v. United States*, 534 U.S. 161, 167, 122 S. Ct. 694, 699, 151 L. Ed. 2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law.").  There are no federal actors involved in any of the circumstances underlying Garland's claims, nor is it clear how there could be.  Garland's grievances lie exclusively against state and local actors.  Accordingly, any claim Garland is attempting to assert under the Fifth Amendment must necessarily fail as a matter of law.[28]

---

[27]     Additionally, because Garland cannot succeed on a due process claim brought under the Fourteenth Amendment, the Court need not address whether the applicable statute of limitations precludes such a  claim, whether Bonds or Mallow was sufficiently personally involved to trigger § 1983 liability on such a claim, or whether municipal liability attaches to the City with respect to such a claim.  As with his other claims, because there is no underlying constitutional claim here, these considerations are moot.

[28]     As with his other three claims, because there is no viable Fifth Amendment claim, the Court need not address the applicable statute of limitations, the personal involvement of Bonds and Mallow, or the issue of municipal liability with respect to this claim.

V.      **CONCLUSION**

For the reasons set forth above, in light of the undisputed factual record, all of the claims Garland attempts to assert fail as a matter of law.  Consequently, Garland's motion for summary judgment is denied, and Defendants' motions for summary judgment are granted.  A separate Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge